CATHEY *v.* BOWEN.

Opinion delivered April 19, 1902.

1.  APPEAL—OBJECTIONS NOT MADE BELOW.—Objections to instructions made for the first time on appeal cannot be considered.  (Page 350.)

2.  JURISDICTION—APPEAL.—Where defendant asked for a new trial in a justice's court, which was granted, and the case was set for retrial, and subsequently defendant withdrew his application for a new trial and prayed an appeal to the circuit court, which was granted, the effect of the proceedings was to leave the original judgment in force, and the circuit court acquired jurisdiction on appeal.  (Page 350.)

3.  REPLEVIN—JUDGMENT.—A defendant in replevin will not be prejudiced by a judgment against him for the value of the property, and not in the alternative, if it appears that a judgment for delivery of the property could not have been executed. (Page 350.)

Appeal from Lonoke Circuit Court.

GEORGE M. CHAPLINE, Judge.

Affirmed.

*Trimble & Robinson,* for appellant.

If the debt has been paid, plaintiff cannot maintain replevin. 35 Ark. 169; 3 Am. & Eng. Enc. Law, 205.  Judgment is not in the alternative, and must be reversed. 35 Ark. 544; 29 Ark. 270; 14 Ark. 425; 19 Wis. 416.

*J. H. Harrod,* for appellee.

A judgment in the alternative was not required. Sand. & H. Dig., § 6398.

WOOD, J. Bowen brought replevin in a justice's court against Cathey for two bales of cotton, and recovered judgment. Cathey asked and was granted a new trial, but before the trial day came on he asked to withdraw his application for a new trial, which he was allowed to do, and then appealed to the circuit court. In the circuit court Bowen again recovered judgment, and Cathey appeals to this court. As grounds for reversal it is claimed: (1) That the verdict of the jury was contrary to the evidence; (2) that the court erred in its charge to the jury; (3) that the circuit court had no jurisdiction; (4) that the judgment was not in the alternative.

We will consider these propositions in the above order.

First. Bowen alleged in his complaint "that he had a mortgage on the cotton," and "was entitled to the immediate possession of it." Appellant did not defend on the theory that there was no debt, or that the debt had been paid, but on the ground that if appellee had any lien under a mortgage, it was junior to the lien of the attachment under which appellant held possession of the property, and that the matter involved in this suit was *res judicata,* and that appellee was estopped. There was no pretense that, if there was a mortgage, the same had been satisfied and cancelled. The mortgage was introduced in evidence. The consideration named was $30. Bowen testified: "I have a mortgage on the cotton in controversy given by Hiram Cheese and Amanda Cheese." If the debt had been paid, that would, *ipso facto,* have extinguished the mortgage. When a mortgage debt is paid, the lien of the mortgage is gone. Whether satisfaction has been entered upon the mortgage itself or upon the record or not, the mortgage itself is *dead.*

While the appellee's testimony is couched in somewhat general terms, yet we think it sufficient to support the verdict of the jury that the appellee had a mortgage lien on the cotton.

The court instructed the jury that: "If you find that she and her husband [Amanda and Hiram Cheese] gave to the plaintiff a mortgage thereon, which he now holds unsatisfied, then you will find for the plaintiff." There was no objection to this, and there was sufficient legal evidence to warrant it.

Second. We cannot consider objections to instructions made here for the first time. There were no exceptions to the trial court's charge.

Third. The circuit court had jurisdiction. On December 29, 1897, Bowen recovered judgment in the justice's court. On January 6, 1898, Cathey asked a new trial, and it was granted, and the case set for January 15. On the 15th the case was continued until February 2. On January 21 Cathey asked to withdraw his application for a new trial, and prayed an appeal to the circuit court, which was granted. When the application for a new trial was abandoned, it left the judgment of December 29 in full force. This must be taken as the result of the rulings on the appellant's "fast and loose" proceedings before the magistrate. The justice might well have refused to have accommodated him in all of his unstable ways. But appellant should not be heard to complain of irregularities which he invited, since they do not affect the justice's jurisdiction. The justice granted the new hearing, it appears, but it is not shown that his judgment was ever set aside. Taking the whole record together, it should be construed as nothing more than the filing of a motion for new trial, which was afterwards withdrawn by the party making it, leaving the judgment as entered by the justice to stand, and from which, within the time allowed by law (30 days), an appeal was duly prayed for,. granted, and prosecuted to the circuit court.

Fourth. The verdict was as follows: "We, the jury, find for the plaintiff, and value of cotton $44." The judgment was as follows: "It is therefore considered, ordered and adjudged that plaintiff have and recover of the defendant and his sureties on said appeal bond the sum of $44 and all costs herein expended." A reversal of this judgment is asked because it is not in the alternative. The statute says: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the delivery of the property, or for the value thereof in case a delivery cannot be had." The return on the order of delivery shows that appellant refused to deliver the two bales of cotton, and refused to give cross bond. Cathey answered that he as constable held the cotton claimed by Bowen under an order of attachment in the case of *Flynn* v. *Cheese,* lately pending before W. G. Graham, J. P.; that the cotton claimed by Bowen was the same that was held by him under the attachment. It further appears that Cathey was

ordered by Graham, the justice, on November 25, to sell the cotton held by him and pay the proceeds over to Flynn. And that on November 20, 1897, he returned the execution partly satisfied. In *Swantz* v. *Pillow,* 50 Ark. 300, this court, speaking through Judge Cockrill, said: "In replevin the delivery of the property is the primary object of the action. The value is to be recovered in lieu of it, as an alternative, only in case a delivery cannot be had of the specific property. Whatever purpose beneficial to the defendant the judgment in the alternative may serve, it is not put in that form to give one who has been adjudged in the wrong his election to pay the assessed value and retain the property as his own against the will of the party to whom the judgment of the court has awarded it." While it is better to follow the form prescribed by the statute in entering judgments in replevin, yet, where the record shows conclusively, as it does here, that a judgment for delivery could not have been executed, the error or irregularity could not have been prejudicial to appellant. It was not an error for which the judgment should be reversed.

Affirm.